```
                    United States District Court
                      District of Massachusetts
 _____
                               )
ARBORJET, INC,                 )
                               )
        Plaintiff,             )
                               )
        v.                     )    Civil Action No.
                               )    14-14129-NMG
RAINBOW TREECARE SCIENTIFIC    )
ADVANCEMENTS, INC.,            )
                               )
        Defendant.             )
 _____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises from an allegation of a breach of a sales agency agreement between plaintiff Arborjet, Inc. ("Arborjet") and defendant Rainbow Treecare Scientific Advancements, Inc. ("Rainbow"). Arborjet is a designer and manufacturer of insect and pest control products for direct injection into trees. Rainbow manufactures and sells pesticides for the protection of trees as well and also distributes pesticides manufactured by other companies. It is a direct competitor of Arborjet.

Pending before the Court is the plaintiff's motion for a preliminary injunction (Docket No. 1) to enjoin Rainbow from marketing, distributing or selling the product ArborMectin. For the reasons that follow, plaintiff's motion will be allowed.

## I. Background

Arborjet is a Massachusetts corporation based in Woburn that has been in the business of manufacturing and selling pesticides for the treatment and protection of trees for 15 years. In 2008, after five years of research and development, Arborjet began selling its emamectin benzoate product known as TREE-age. TREE-age, when injected into trees using Arborjet's proprietary injection system, protects trees from the emerald ash borer and other destructive pests. TREE-age is one of Arbojet's most successful products.

Defendant Rainbow is a Minnesota corporation that has been in the tree pesticide business for 35 years. Rainbow not only manufactures and sells pesticides and other treatments for the protection of trees, it also distributes pesticides manufactured by other companies.

In 2006, Arborjet and Rainbow commenced their business relationship when Arborjet produced a generic product for Rainbow to distribute. In the summer of 2008, Rainbow solicited Arborjet to become its distributor of the full line of Arborjet's products, including TREE-age.

During negotiations regarding Rainbow's request, plaintiff allegedly expressed concern that if it allowed Rainbow to distribute its products, Rainbow would use that distributorship to expand its own market and copy Arborjet's most popular

products to sell directly to Arborjet's customers. Rainbow allegedly assured Arborjet that it had no such intention.

**A.   The Sales Agency Agreement**

On August 1, 2008, Arborjet and Rainbow entered into a Sales Agency Agreement ("Agreement"), wherein Rainbow agreed to devote its best efforts to the promotion and sale of Arborjet's products.

Section Three of the Agreement consists of a confidentiality and nondisclosure agreement. Within the same section, Rainbow further agreed that

> in view of the confidential information regarding Arborjet's business affairs, plans, and necessities, [Rainbow] will not engage in affairs intended to replicate the Arborjet's products or processes.

Arborjet alleges that the express purpose of that provision, as discussed by the parties, was to protect Arborjet during the distributorship from any copying of its products or leveraging of relationships with Arborjet's customers by Rainbow. Plaintiff claims that the provision has been violated regardless of whether Rainbow misappropriated any of its confidential information.

The Agreement also contains a non-competition provision in Section Six, which states:

> [Rainbow] will not engage, directly or indirectly,... in manufacturing, buying, selling, or dealing in systemic injections systems that replicate the Arborjet system of using a plug which seals the

> formulation in the xylem and a needle which injects
> behind the plug for a period of 2 years after the
> termination of this agreement...

Plaintiff does not allege that Rainbow breached Section Six but the parties dispute the relevance of that provision to plaintiff's breach of contract claim.

**B.    Alleged Breach of Agreement**

Arborjet alleges that Rainbow violated Section Three of the Agreement by "engaging in affairs intended to replicate" its products.

Plaintiff contends that Rainbow began developing and testing ArborMectin, defendant's own emamectin benzoate product that was intended to replicate TREE-age, as early as 2011. Rainbow's website describes partnering with several institutions and companies to conduct research studies regarding ArborMectin's effectiveness on certain tree-destroying pests. Arborjet alleges that one or more of those studies took place while Rainbow was a distributor for Arborjet and subject to the terms of the Agreement.

As a distributor of Arborjet's products, Rainbow had regular and close contact with Arborjet's scientists, employees and customers and thus had access to large amounts of confidential information regarding Arborjet's technology, business and customers.  Plaintiff does not allege that Rainbow wrongfully misappropriated Arborjet's confidential information

-4-

but contends that such proof is immaterial to its breach of contract claim.

Rainbow voluntarily terminated the Agreement with Arborjet in February, 2013 and publicly disclosed that it was going to distribute ArborMectin in August, 2014.  In October, 2014, Rainbow sent a blast marketing email to customers with the subject line "Improved TREE-age! NEW ArborMectin Speed VIDEO." The body of the email stated that

> Rainbow is excited to offer ArborMectin$^{TM}$, an improved 4% emamectin benzoate (TREE-age®) tree injection formulation....Treat trees 30-70% faster using ArborMectin$^{TM}$ versus TREE-age®.

The email included a link to a video available on Rainbow's website purporting to demonstrate the relative speeds of the two products.  That website also characterizes the product as a replacement for TREE-age and indicates that ArborMectin is "backed by science", "proven to be effective" and treats trees "consistently faster than TREE-age."

C.  **Procedural History**

Plaintiff Arborjet filed the instant lawsuit and motion for preliminary injunction on November 3, 2014.  The complaint asserts claims for 1) breach of contract, 2) breach of implied covenant of good faith and fair dealing, 3) false advertising and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a), 4) false advertising in violation of M.G.L.

c. 266, § 91, et seq. and 5) common law unfair competition. Rainbow timely removed the case to this Court and a hearing on the pending motion was held shortly thereafter.

## II. Plaintiff's Motion for a Preliminary Injunction

### A. Legal Standard

In order to obtain a preliminary injunction, the moving party must establish

> (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships and (4) a fit (or lack of friction) between the injunction and the public interest.

Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). Out of these factors, the likelihood of success on the merits "normally weighs heaviest on the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976). The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction. See Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986).

**B. Application**

**1. Likelihood of Success**

Arborjet contends that it is likely to succeed on the merits of its claims because Rainbow's conduct directly violated the Agreement as well as the Lanham Act and related state laws. Those arguments are contested by Rainbow.

**a. Breach of Contract and Covenant of Good Faith and Fair Dealing**

To prove a claim for breach of contract, a plaintiff must show 1) that the parties reached a valid and binding agreement, 2) that the defendant breached the terms of that agreement and 3) that the plaintiff's damages are a proximate cause of that breach. Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999). Every contract also "implies good faith and fair dealing between the parties to it." Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471 (1991). The implied covenant ensures that "the parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass 376, 385 (2004).

Arborjet asserts that it is highly likely to succeed on the merits of its contract claims because the plain language of Section 3 of the Agreement is unambiguous. It states that while the Agreement was in effect, Rainbow was contractually barred

from engaging in "affairs intended to replicate" Arborjet's products. The scope of that provision is not limited to Rainbow's misappropriation of Arborjet's proprietary confidential information. Plaintiff avers that the defendant violated the agreement by developing ArborMectin as an alternative to or an improvement of TREE-age, which was intended to replicate plaintiff's product while it was still bound by the terms of the Agreement.

Plaintiff also contends that defendant breached the implied covenant of good faith and fair dealing because it was fully aware at the time the Agreement was negotiated that the purpose of Section 3 was to prevent Rainbow from copying Arborjet's products.

Rainbow responds that the non-competition provision in Section Six informs the proper interpretation of the Agreement's non-disclosure provision in Section Three. Section Six prohibits Rainbow from "replicating" a specific injection system which ArborMectin does not employ. Defendant suggests that such a limitation applies to Section Three because Arborjet cannot use the non-disclosure provision to create a broader non-competition obligation than the one included in the Agreement's express non-competition provision. Rainbow contends that the law does not allow undefined, non-compete provisions to restrict ordinary competition, citing Rohm & Hass Elec. Materials, LLC v.

Elec. Circuits Supplies, Inc., 579 F. Supp. 110, 124 (D. Mass. 2010).

The Court disagrees that Section Six of the Agreement limits the scope of Section Three. Section Six, after all, governs the extent of non-competition *after* the termination of the Agreement. Section Three, on the other hand, governs the actions of Rainbow *during* the pendency of the Agreement.

Rainbow asserts that it did not breach the Agreement because it did not attempt "to replicate" Arborjet's product. Relying on a dictionary definition of the word "replicate," defendant argues that it did not "replicate" TREE-age because ArborMectin is not a "copy" or "duplicate" of plaintiff's product. Rainbow emphasizes that the products have important differences even though they share the same active ingredient, noting that ArborMectin is less toxic and has lower viscosity than TREE-age.

Defendant's argument is unavailing for two reasons. First, the fact that Rainbow's final product, ArborMectin, has differences from TREE-age is immaterial. By signing the Agreement, Rainbow promised not to engage in activities "intended to replicate" Arborjet's products. Plaintiff has demonstrated a likelihood that it will be able to prove that defendant engaged in research and development to create a product very similar to TREE-age. In fact, Rainbow's product

-9-

has since been marketed as an "improved TREE-age." Second, the Court finds it unreasonable to restrict the scope of the contract as prohibiting only an exact replica of TREE-age in light of Arborjet's particular, expressed concern about direct competition with its own products. Under the contractual interpretation advanced by the defendant, even the most trivial change to TREE-age would negate its contractual obligation.

Accordingly, the Court concludes that plaintiff has a substantial likelihood of succeeding on the merits of its claims of breach of contract and of the implied covenant of good faith and fair dealing.

### b. Lanham Act, 15 U.S.C. § 1125(a)

Plaintiff contends that it is highly likely to succeed on the merits of its Lanham Act and related state law claims because 1) Rainbow's advertisements of ArborMectin are false and misleading and 2) defendant infringed on plaintiff's trademark.

#### i. Misleading Advertising

To prevail on its Lanham Act claim based on false advertising, 15 U.S.C. § 1125(a)(1)(B), Arborjet must prove that

> 1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5)

> the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310-11 (1st Cir. 2002).

False advertising claims are divided into "establishment claims," which represent that studies prove a product superior, and "non-establishment claims," which are general claims of superiority. Gillette Co. v. Norelco Consumer Products Co., 946 F. Supp. 115, 121 (D. Mass. 1996). A plaintiff satisfies its burden of proving that an establishment claim is false or misleading under the Lanham Act by showing that the tests or studies are "not sufficiently reliable to permit one to conclude...that [they] established the claim made." Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Co., 198 F.Supp. 2d 59, 67 (D. Mass. 2002). For non-establishment claims, the plaintiff must meet the higher burden of proving actual falsity of the challenged claim. Gillette, 946 F. Supp. at 121-22.

Plaintiff contends that the defendant's representations that ArborMectin is "backed by science", "proven effective" and "treats trees 30-70% faster than TREE-age" are establishment claims that violate the Lanham Act. It asserts that the research trials relied upon to support Rainbow's claims were unreliable because none of them was subject to peer review and

the studies tested only five or six trees whereas studies of TREE-age tested between 60 and 100 trees. Arborjet alleges that the marketing of ArborMectin as "improved TREE-age" based on inferior studies is therefore misleading and causes customer confusion because 1) the study results do not prove that ArborMectin is an improvement over TREE-age and 2) the statement implies that one company controls both products.

Rainbow denies that the establishment claims in its advertising are false or misleading because they are supported by EPA approval and various scientific research field trials. Rainbow also disputes plaintiff's arguments regarding the reliability of its own studies because Arborjet has offered mere speculation rather than industry or regulatory standards regarding peer review or sample size to establish product effectiveness. The Court is persuaded that the plaintiff has not demonstrated the unreliability of the studies used to support Rainbow's establishment claims.

With respect to the representation that ArborMectin is an "improved TREE-age," the Court agrees with the defendant that it is a non-establishment claim because it is a general claim of superiority. Plaintiff has not met the higher burden of showing actual falsity of the claim because ArborMectin has lower toxicity and viscosity than TREE-age and such differences may be regarded as improvements. Accordingly, plaintiff has not

demonstrated that it is likely to succeed on its Lanham Act claim based on false or misleading advertising because it has not met its burden for its establishment and non-establishment claims.

The Court has, however, expressed its concern that the "improved TREE-age" representation is likely to mislead customers. Rainbow submitted a letter following the November, 2014 hearing, which has been docketed, indicating that it will no longer make advertising or marketing statements that ArborMectin is "improved TREE-age." The Court treats that submission as a binding stipulation that need not be further addressed herein.

### ii. M.G.L. c. 266, § 91

Plaintiff contends that the false and misleading advertisements proffered by the defendant also violate state law. A Massachusetts statute allows a person who is injured by untrue or misleading advertisements to petition to enjoin the person violating the statute from continuing to engage in misleading advertising. M.G.L. c. 266, § 91. This claim "rises or falls with the federal claim." American Medical Sys., Inc. v. Biolitec, Inc., 774 F. Supp. 2d 375, 393 (D. Mass. 2011). Because the Court has concluded that Arborjet has not demonstrated that it is likely to succeed on the merits of its Lanham Act claim based on false advertising, it reaches the same

conclusion with respect to the likelihood of success on the merits of the parallel state law claim.

### iii. Trademark Infringement

To prevail on a claim under the Lanham Act based on "false designation of origin," 15 U.S.C. § 1125(a)(1)(A), plaintiff must prove

> 1) the ownership of a distinctive market entitled to trademark protection, 2) the use of that name in interstate commerce, and 3) its use by another in a manner likely to cause confusion as to the origin of the source of the goods or services.

Nat'l Nonwovens, Inc. v. Consumer Products Enterprises, Inc., 397 F. Supp. 2d 245, 257 (D. Mass. 2005).

The First Circuit Court of Appeals considers eight factors to assess the likelihood of customer confusion: 1) the similarity of the marks, 2) the similarity of the goods, 3) the relationship between the parties' channels of trade, 4) the relationship between the parties' advertising, 5) the classes of prospective purchasers, 6) evidence of actual confusion, 7) the defendant's intent in adopting its mark and 8) the strength of the plaintiff's mark. Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989).

Plaintiff contends that the defendant's website repeatedly uses Arborjet's registered trademarks without including the ® symbol or any other attribution to the owner and that such use is likely to cause confusion in the customer base about the

origin of TREE-age.  While Rainbow acknowledges that the TREE-age and ArborMectin are similar products, it asserts that all the other factors considered in the assessment of confusion weigh in its favor.  It notes, for example, that the marks "TREE-age" and "ArborMectin" are clearly dissimilar, that licensed professionals who purchase TREE-age are sophisticated purchasers and that there is no evidence of actual confusion.

The Court agrees that those factors weigh against a finding of a likelihood of confusion.  Although defendant should be more careful with its attribution of proprietary marks in its communications, plaintiff is unlikely to succeed on its claim for violation of the Lanham Act based on false designation of origin.

### 2. Irreparable harm

Irreparable harm is "a substantial injury that is not accurately measureable or adequately compensable by money damages." Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996).  A plaintiff alleging irreparable injury must show more than a "tenuous or overly speculative forecast of anticipated harm." Id.  Examples of irreparable injuries include loss of incalculable revenue and harm to goodwill or reputation. Id. at 19-20.  In the preliminary injunction context, the First Circuit Court of Appeals measures irreparable harm

> on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.

Braintree Labs, 622 F.3d at 42-43 (internal quotation marks and citations omitted). The Court has already determined that the plaintiff has a substantial likelihood of succeeding on the merits of its contract claim. Arborjet therefore has a lower threshold to overcome to establish irreparable harm.

Plaintiff asserts that there is a significant risk of irreparable harm if the Court does not grant the preliminary injunction because its reputation and relationships with its customers will be damaged. The Court agrees. Rainbow's entrance into the market in competition with TREE-age in violation of the Agreement undoubtedly affects Arborjet's customer relationships. Although plaintiff can be compensated for lost profits by monetary damages, the effect on its goodwill and reputation are particularly hard to quantify. See Kroeger v. The Stop & Shop Companies, Inc., 13 Mass.App.Ct. 310, 322 (1982).

The Court recognizes that defendant has agreed to refrain from making representations that ArborMectin is an "improved TREE-age" in its marketing materials, which will lessen the harm on Arbojet's goodwill. Nevertheless, plaintiff has made a sufficient showing that it will likely suffer irreparable harm

to its reputation and customer relationships if defendant is not enjoined from marketing and selling Arbormectin during the pendency of this litigation.

### 3. Remaining factors

Plaintiff contends that the balance of equities tips heavily in its favor.  That is because it has purportedly invested five years in researching and developing TREE-age, which has become its best-selling product, whereas Rainbow has a relatively minimal investment in its product and has only recently begun to sell ArborMectin.  Defendant disagrees and asserts that the harm to Rainbow is definite and significant because it projects $2.5 million in sales of ArborMectin in 2015.  The Court concludes that the balance of equities tips somewhat in plaintiff's favor, but not decisively.

Finally, Arborjet contends that its requested relief comports with the public interest in ensuring that businesses adhere to their contractual obligations and do not engage in false and misleading advertising.  Rainbow responds that an injunction would be contrary to public interest because competition is encouraged in the marketplace.  It avers that this lawsuit is a thinly-veiled attempt by plaintiff to reinstate the larger profits it enjoyed prior to its patent expiration.

Although competition is generally encouraged in the marketplace, here the parties voluntarily and knowingly contracted to limit their competition. Because the Court has determined that plaintiff will likely succeed on the merits of its breach of contract claim, it is in the public interest to enforce such contractual obligations.

**C.    Security under Fed. R. Civ. P. 65(c)**

A movant for a preliminary injunction must give

> security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).

Rainbow's counsel informed the Court at the November, 2014 hearing that Rainbow has sold $375,000 of ArborMectin "in the last few months." It projects $2.5 million in sales of the product in 2015. In light of those prospective sales, the Court will require the posting of a security bond in the amount of $500,000.

## ORDER

For the foregoing reasons, the Court concludes that the plaintiff is entitled to injunctive relief as more fully described in the preliminary injunction attached hereto and plaintiff's motion for preliminary injunction (Docket No. 1) is therefore **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 3, 2014