**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ARBORJET, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. |
| | )   14-14129-NMG |
| RAINBOW TREECARE SCIENTIFIC | ) |
| ADVANCEMENTS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM & ORDER

**GORTON, J.**

This case arises from allegations by plaintiff Arborjet, Inc. ("plaintiff" or "Arborjet") that defendant Rainbow Treecare Scientific Advancements, Inc. ("defendant" or "Rainbow") breached a sales agency agreement between the parties and the implied covenant of good faith and fair dealing.  Arborjet designs and manufactures insect and pest control products, such as TREE-age, for direct injection into trees.  Rainbow manufactures and sells treatments for the protection of trees and also distributes pesticides manufactured by other companies.

In November, 2015, a jury found through a special verdict form that although Rainbow breached the contract without causing Arborjet any damages, its breach of the implied covenant of good faith and fair dealing did cause Arborjet damages.  The jury

-1-

awarded $325,000 in damages to Arborjet for Rainbow's latter breach.

Pending before the Court is Arborjet's motion for a permanent injunction (Docket No. 185) and Rainbow's renewed motion for judgment as a matter of law or, in the alternative, for remittitur or a new trial (Docket No. 193).  For the reasons that follow, Arborjet's motion will be allowed, in part, and denied, in part, and Rainbow's motion will be denied.

I.  **Background**

The facts of this case have been described at length in previous Memoranda & Orders ("M&Os") issued by this Court (Docket Nos. 34 and 132) and by the First Circuit Court of Appeals ("the First Circuit") in Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc., 794 F.3d 168 (1st Cir. 2015).  The following are the salient facts for the purpose of this M&O.

Arborjet filed its complaint in November, 2014 alleging, inter alia, that Rainbow helped third-party Rotam North America ("Rotam") develop ArborMectin, a generic version of TREE-age, in violation of Rainbow's contractual obligation to Arborjet not to engage in affairs intended to replicate Arborjet products or processes.

Shortly thereafter, Arborjet filed a motion for a preliminary injunction that would, inter alia, prevent Rainbow

-2-

from selling, distributing and/or marketing ArborMectin.  This
Court allowed the motion and imposed preliminary injunctive
relief in December, 2014.  The First Circuit affirmed the entry
of the preliminary injunction with respect to the sale,
distribution and/or marketing of ArborMectin in July, 2015.

In November, 2015, the case proceeded to trial at which
Arborjet pursued only its claims for breach of contract and
breach of the implied covenant of good faith and fair dealing.

At the conclusion of Arborjet's case, Rainbow moved for
judgment as a matter of law on both claims for lack of
sufficient evidence.  The Court denied that motion without
prejudice.

After the close of all evidence at trial, the Court asked
Arborjet to address Rainbow's contention that Arborjet had
presented no evidence at trial of actual damages.  Arborjet
responded that it had introduced evidence of lost profits during
its case-in-chief in the form of

> profit calculations of TREE-age, per-unit calculations
> . . . [and] projected sales projections from Rainbow and
> the actual volume of the sales falling below those
> projections.

Arborjet added that it had also submitted evidence that it
earned a profit of $225 per liter of TREE-age sold.  The Court
took the matter under advisement.

Arborjet then moved for judgment as a matter of law on its substantive claims.  The Court took the motion under advisement as well.

At the charge conference, the Court informed the parties that it would submit the case in its entirety to the jury and ask it to consider the substantive charges and the issue of compensatory or nominal damages.  Accordingly, the Court denied without prejudice Arborjet's motion for judgment as a matter of law.

On the seventh day of trial, the jury returned a verdict in favor of Arborjet on its claim of breach of the implied covenant and awarded it $325,000 in damages.  Arborjet filed the pending motion for permanent injunctive relief and Rainbow moved for judgment as a matter of law or, in the alternative, for remittitur or a new trial.

## II.  <u>Plaintiff's motion for a permanent injunction</u>

### A.  Legal standard

Before issuing a permanent injunction, a district court must find that 1) the plaintiff has prevailed on the merits, 2) the plaintiff would suffer irreparable injury without injunctive relief, 3) the harm to the plaintiff in the absence of injunctive relief would outweigh the harm to the defendant in the face of injunctive relief and 4) the public interest would not be adversely affected by injunctive relief. <u>Asociación de</u>

Educación Privada de P.R., Inc. v. Garcia-Padilla, 490 F.3d 1, 8 (1st Cir. 2007).

### B.   Application

Arborjet seeks to enjoin permanently Rainbow from selling, distributing or marketing ArborMectin or any other emamectin benzoate product for tree injection manufactured by Rotam or any of Rotam's affiliates, in perpetuity.

In the alternative, Arborjet seeks an injunction that would bar Rainbow from such activities until February, 2018, the date upon which ArborMectin purportedly would have reached the market if Rainbow had waited until after the termination of its contract with Arborjet and then begun to help Rotam develop and market a generic product.

### 1.   Prevailing party

As the Court instructed the jury, to prove that Rainbow breached the implied covenant of good faith and fair dealing, Arborjet needed to show that 1) it had a contract with Rainbow, 2) Rainbow breached the covenant by acting with a lack of good faith in relation to the contract and 3) Arborjet suffered damages as a result of Rainbow's actions.

The jury verdict confirms that Arborjet prevailed on its claim of breach of the covenant because the jury found that it had proved that 1) it entered into a contract with Rainbow, 2) Rainbow breached the implied covenant of good faith and fair

dealing with respect to that contract and 3) the breach caused it to sustain damages.

The fact that Arborjet did not prevail on the merits of its separate claim of breach of contract is irrelevant.  Although the implied covenant cannot broaden the scope of the contract or add new terms, rights or duties to it, see Chokel v. Genzyme Corp., 449 Mass. 272, 276 (2007), a party can violate the implied covenant of good faith and fair dealing without breaching the terms of the contract so long as it destroyed or injured the right of the other party to receive benefits under the contract, see Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-73 (1991)(affirming that the exercise of a contractual right by the plaintiff in bad faith and as a pretext constituted a breach of the implied covenant), and Fortune v. Nat'l Cash Register Co., 373 Mass. 96, 101, 104-05 (1977)(affirming that the employer breached the implied covenant without breaching the literal terms of the contract when it terminating an employee in order to avoid paying him earned commission).

Accordingly, the Court finds that Arborjet prevailed on the merits of its claim of breach of the implied covenant.

### 2.  Irreparable harm

Irreparable harm can occur when the plaintiff suffers a substantial injury that cannot be accurately measured or

-6-

adequately compensated by money damages or other legal remedies. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18-19 (1st Cir. 1996).  The claim of irreparable injury must involve more than a "tenuous or overly speculative forecast of anticipated harm." Id. at 19.  Examples of irreparable injuries include injuries to goodwill and reputation because they, by nature, cannot be easily measured or fully compensable in damages. Id. at 20.

Arborjet declares that, without a permanent injunction, it will suffer immeasurable injury to its goodwill and reputation that cannot be fully remedied by the $325,000 award of damages. It contends that it expended significant effort and investment to develop its goodwill and reputation with TREE-age clients such as the City of Chicago and other municipalities and that it will lose credibility and goodwill with those clients if Rainbow is permitted to convince them to switch to a generic product. Arborjet submits that Rainbow's previous efforts in persuading at least two of its TREE-age clients to switch to a generic product reflects Rainbow's intent to misappropriate Arborjet's clients and its goodwill.

Rainbow's argument that Arborjet presented only speculative evidence of Rainbow's projected sales of ArborMectin at trial is misplaced because it focuses on the issue of lost profits, which can be a measurable economic harm, rather than harm to goodwill

-7-

and reputation, an injury that the First Circuit often recognizes as irreparable harm. See Ross-Simons, 102 F.3d at 20.

Arborjet thus faces irreparable injury in the form of harm to its goodwill and reputation if Rainbow, a former TREE-age distributor, is not enjoined from targeting and convincing TREE-age clients to replace TREE-age with a generic product.

### 3.   Remaining factors

Arborjet submits that it will suffer irreparable harm without injunctive relief that far outweighs any harm that Rainbow may suffer in the face of injunctive relief because Rainbow has no right to sell, market or distribute a generic version of TREE-age as a result of its lack of good faith under the contract.  Arborjet asserts that the requested injunction is narrowly tailored to its anticipated harm because the injunction would prohibit only Rainbow, not Rotam or another third-party manufacturer, from competing with Arborjet by selling, marketing or distributing ArborMectin or any other emamectin benzoate product manufactured by Rotam or its affiliates.  Arborjet further avers that injunctive relief would not be adverse to the public interest or any consumers because Rotam and other third-parties could still sell ArborMectin and similar products.

Rainbow responds that it will suffer significant harm under the requested injunction because

1) its company is known for providing customers with a full "toolbox" of options for tree treatment which would include emamectin benzoate products,

2) Arborjet seeks to prevent it from distributing "any emamectin benzoate product for sale to its customers forever" which would injure Rainbow's goodwill and reputation and place Arborjet in a better position than if Rainbow had not breached the covenant,

3) injunctive relief would be punitive in that it would overcompensate Arborjet for its injuries and put it in a better position than it would have been in without the breach and

4) Arborjet should have anticipated that its competitors would develop and sell generic products with the same active ingredients as TREE-age once the patent for those active ingredients expired.

The Court agrees with Rainbow that the balance of hardships does not support a permanent injunction on selling, marketing or distributing certain generic versions of TREE-age in perpetuity. The balance of hardships does, however, support an injunction on such activity until February, 2018, the date upon which Arborjet estimates Rainbow could have developed and marketed a generic product without violating the covenant in the contract. The Court notes that Rainbow summarily disputes Arborjet's estimated date of February, 2018 but offers no evidence to support its alternate estimate of February, 2016 as the date at issue.

Rainbow contends further that the scope of the requested injunction is too broad and should be limited to 1) 4% emamectin benzoate formulations, rather than "all" emamectin benzoate formulations, manufactured by Rotam, 2) clients whose first

interaction with Rainbow involved the sale of TREE-age and not also clients to whom Rainbow first sold other products before selling them TREE-age and 3) Rainbow's distribution business, and not also to Rainbow's service company which separately and independently helps customers apply ArborMectin.  Rainbow explains that its service company should not be "forced" to use TREE-age when there is another "more efficient and less expensive" alternative available.

Arborjet does not specifically address Rainbow's concerns.

The Court disagrees with Rainbow.  Rainbow breached the covenant when it failed to act in good faith under the contract by helping Rotam develop a competitor product to TREE-age. Arborjet will suffer injury to its goodwill and reputation if Rainbow is allowed to solicit clients who currently use TREE-age to switch to ArborMectin or another emamectin benzoate product, regardless of whether they previously did other business with Rainbow or whether the replacement product contains exactly 4% emamectin benzoate.  If the Court excludes Rainbow's service company from the sweep of the injunction, the service company could still assist clients in the application of ArborMectin procured from Rotam or another source which would undermine the efficacy of the necessary injunction.

Accordingly, the Court will enjoin Rainbow from selling, marketing and/or distributing ArborMectin or any other emamectin

-10-

benzoate product for tree injection manufactured by Rotam or its affiliates until February, 2018.  Arborjet's motion will therefore be allowed, in part, and denied, in part.

## III. **Defendant's motion for judgment as a matter of law or, in the alternative, for remittitur or a new trial**

Rainbow moves for judgment as a matter of law vacating the jury award of $325,000 because the jury verdict was purportedly internally inconsistent and unsupported by the evidence at trial.  In the alternative, Rainbow seeks a remittitur of the damages award to a nominal amount because the jury award was based upon speculative evidence.  As a third option, Rainbow requests a new trial because the jury verdict was against the clear weight of the evidence and the jury was not specifically instructed that it should construe an ambiguous contract against the drafter.

### A.   **Legal standards**

#### 1.   **Judgment as a matter of law**

Judgment as a matter of law overturning a jury verdict is warranted only if there was insufficient evidence at trial for a reasonable jury to find in favor of the non-moving party. Fed. R. Civ. P. 50.  The court must examine the evidence of record, draw all reasonable inferences in favor of the prevailing party and determine whether there is a sufficient evidentiary basis for the verdict. Zimmerman v. Direct Fed. Credit Union, 262 F.3d

70, 75 (1st Cir. 2001).  The court may not assess witness credibility, resolve conflicts in testimony or weigh the evidence.  Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010).  Although a non-moving party with the burden of proof at trial must present more than a "mere scintilla" of evidence and cannot rely on conjecture or speculation, see id., the court must not disturb a jury verdict unless the evidence, viewed in the light most favorable to the prevailing party, "points unerringly to an opposite conclusion." Zimmerman, 262 F.3d at 75.

### 2.    Remittitur of the award of damages

A jury award of damages can be remitted or reduced if, when viewed in the light most favorable to the prevailing party, it "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it." Wortley v. Camplin, 333 F.3d 284, 297 (1st Cir. 2003).  The party seeking remittitur bears the heavy burden of showing that the award is

> grossly   excessive,   inordinate,   shocking   to   the
> conscience of the court, or so high that it would be a
> denial of justice to permit it to stand.

Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1st Cir. 1999)(citing Havinga v. Crowley Towing & Transp. Co., 24 F.3d 1480, 1484 (1st Cir. 1994)).  Remittitur is warranted only if the award is

> so grossly disproportionate to any injury established by
> the evidence as to be unconscionable as a matter of law.

-12-

Koster, 181 F.3d at 34.  An award cannot be remitted if the court merely perceives that the award is "extremely generous" or the damages are "considerably less." Id.

If the court finds an award excessive, it will give the prevailing party the choice between accepting a reduced award and a new trial on damages, see Bisbal-Ramos v. City of Mayaguez, 467 F.3d 16, 26 (1st Cir. 2006), unless the defects in the award are "readily identified and measured" such that the reduction would be "fairly mechanical and [would] not interfere with the jury's function," see Kolb v. Goldring, Inc., 694 F.2d 869, 875 (1st Cir. 1982).

### 3.  New trial

In the alternative, a court has the discretion to order a new trial when the jury verdict is against the clear weight of the evidence, is based upon false evidence or would result in a clear miscarriage of justice. Mayo v. Schooner Capital Corp., 825 F.2d 566, 570 (1st Cir. 1987).  Although the authority of a court to order a new trial is "broad", the First Circuit has "often" emphasized that

> a district judge cannot displace a jury's verdict merely because he disagrees with it or because a contrary verdict may have been equally . . . supportable.

Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009)(internal quotation marks omitted).

If the moving party seeks a new trial on the basis of an omitted jury instruction, the court can set aside the verdict if it finds that the omitted instruction 1) correctly stated the substantive law, 2) was not substantially covered in the jury instructions as a whole, and 3) was integral to an important point in the case. Zimmerman, 262 F.3d at 78-79.  In doing so, the court must keep in mind that

> [j]ury instructions necessarily operate at a fairly high level of generality.  Consistent with this reality, a judge need not ruminate about every point of evidence nor instruct the jurors on how to weigh each bit of testimony.

Id. at 79 (internal citations omitted).  The court need only give jury instructions that, taken as a whole, "advert[] to the critical issues" and set forth the general legal framework applicable to those issues "without unduly complicating matters or misleading the jury." Id. at 80.

## B.   Application

### 1.   Judgment as a matter of law

Rainbow moves for judgment as a matter of law on three grounds.  First, it contends that there was insufficient evidence for a reasonable jury to find a valid and binding contract because the Sales Agency Agreement("the Agreement") was signed by Rainbow, but not Arborjet, despite its "unambiguous language . . . [and] clear requirement that it be signed" by both parties.  Second, Rainbow asserts that the evidence does

-14-

not support the jury finding that it "engaged in affairs intending to replicate TREE-age" by intentionally helping Rotam create an exact copy of TREE-age.  Third, Rainbow avers that there was no evidence of a breach of the covenant because 1) there was no evidence that it breached the contract or that it used a contractual right to destroy or frustrate Arborjet's purpose for entering into the contract and 2) Arborjet mentioned the phrase "good faith" only once during trial and that was during its closing argument.

Judgment as a matter of law based upon Rainbow's first theory of contractual invalidity is unwarranted.  The "unambiguous language" to which Rainbow refers is located in a paragraph at the bottom of the last page of the Agreement which provides:

> Authorization Page to be signed by Arborjet and Rainbow Treecare Scientific Advancements for Sales Agency Agreement beginning 8/1/2008[.]

That language is not "unambiguous."  It is unclear, for example, whether it required both parties to sign the Agreement itself, rather than a separate "Authorization Page", or whether the phrase "to be signed" required the parties to sign the document "before" the Agreement could bind the parties on August 1, 2008.

The Court cannot dispel the ambiguity of the "clear requirement" as a matter of law by construing the language in context.  The section immediately preceding the referenced

-15-

language does not address the issue of signatures or
authorization pages and the section immediately following it
contains a signature line designated for Rainbow's president
Thomas Prosser.  There is no corresponding signature line for an
Arborjet representative.  The Court thus cannot conclude, as a
matter of law, that the absence of both parties' signatures on
the Agreement precludes its validation.

The Court also declines to grant judgment as a matter of
law to Rainbow with respect to its other contentions.  There is
no need to consider whether the jury had a sufficient
evidentiary basis to find that Rainbow breached the contract
provision that prohibited it from "engag[ing] in affairs
intending to replicate TREE-age."  That is because the jury
found Rainbow liable only for breaching the implied covenant of
good faith and fair dealing, not for breach of contract.

Furthermore, Arborjet presented sufficient evidence at
trial for the jury to find a lack of good faith on Rainbow's
part such as evidence that Rainbow 1) talked to Rotam about
developing their own emamectin benzoate product as an
alternative to TREE-age and 2) provided Rotam with the
comparative results of its efficacy testing of TREE-age and
their product when used against certain insects.  Rainbow's
claim that Arborjet did not use the specific phrase "lack of

good faith" in its presentation of evidence at trial is irrelevant.

Accordingly, Rainbow's motion for judgment as a matter of law will be denied.

### 2.   Remittitur of the award of damages

In the alternative, Rainbow moves for remittitur of the award of damages to a nominal amount because the only evidence of damages at trial consisted of Rainbow's own estimate that it could sell 15,100 liters of ArborMectin over the next three years and witness testimony that Arborjet earned $225 in profit from each unit of TREE-age sold.  Rainbow argues that the $325,000 award was thus 1) speculative to the extent that it was based upon "projections of potential sales that never occurred", 2) baseless because there was "no evidence of damages arising [specifically] from the breach of the covenant" and 3) unsupported because, if the jury had actually relied on the sparse evidence of damages at trial, it would have awarded Arborjet $3,397,500 in compensatory damages for lost profits.

The Court declines to remit the jury award of damages in this action.  The jury could have rationally concluded from evidence of Rainbow's projected sales of ArborMectin and Arborjet's gross profits on each unit of TREE-age that Arborjet suffered $3,397,500 in lost profits as a result of Rainbow's lack of good faith under the contract.  The fact that the jury

-17-

award of $325,000 is about 10% of Arborjet's alleged gross profit does not render it subject to remittitur.  It does not "exceed[] any rational appraisal or estimate of the damages that could be based upon the evidence" before the jury.  See Kolb, 694 F.2d at 873 (emphasis added).  Rainbow also presents no legal authority for its contention that evidence of projected future sales is inherently too speculative to support a rational estimate of lost profits.  Moreover, the fact that Rainbow cannot readily describe the mathematical process by which the jury reached the sum of $325,000 does not support its request to set aside the jury's verdict.  Remittitur is unwarranted.

Accordingly, Rainbow's motion for remittitur will be denied.

### 3.  New trial

As a third alternative, Rainbow moves for the Court to set aside the jury verdict and order a new trial.  Rainbow characterizes the jury verdict as against the clear weight of the evidence because, it claims, there was no evidentiary basis for the jury to find that 1) it breached a contract, 2) it breached the covenant or 3) its alleged breach of the covenant caused Arborjet damages.  Rainbow refers the Court to its previous arguments and does not raise any new arguments to support its request for a new trial.

The Court declines to set aside the jury verdict as against the clear weight of the evidence.  As discussed above, there was sufficient evidence at trial to support the jury's findings that Rainbow did not act in good faith under the contract and that its actions caused Arborjet harm.  There is no need to consider the evidentiary basis for a jury finding that Rainbow breached the contract because the jury found Rainbow liable only for breach of the covenant, a finding that does not require it first to find that Rainbow breached the contract.

Rainbow next contends that the Court failed to instruct the jury specifically that if a contract term is ambiguous, it must be construed against the party that drafted the term.  Rainbow submits that it timely objected to the omission of that instruction and that the omission was erroneous and prejudicial.

During the trial, the Court instructed the jury that, to interpret ambiguous contract terms, it should ascertain the intent and expectations of the parties by considering additional evidence such as the words of the contract, the contract as a whole, other relevant documents and the statements and actions of the parties during negotiations.

The Court notes that 1) Rainbow timely objected to the omission of its instruction that the jury should construe ambiguous contract terms against the drafter and 2) the Court

overruled its objection because its instructions sufficiently charged the jury on ambiguity.

Specifically, Rainbow asserts that the phrase "affairs intended to replicate [] Arborjet's products or processes" in the Agreement is ambiguous and could be interpreted reasonably as applying 1) only to equipment and only to identical replications or 2) more broadly to equipment, formulations and non-identical replications.  Rainbow seeks a new trial on the grounds that the omitted instruction was legally correct, integral to an important point in the case and not otherwise incorporated in the jury instructions.

Although the omitted instruction correctly stated the substantive law, see Rams v. Royal Caribbean Cruise Lines, Inc., 17 F.3d 11, 13 (1st Cir. 1994)(finding, at the summary judgment stage, that "the contract is at the very least ambiguous and [] therefore it must be construed against the defendant" as the party who drafted the contract), the Court finds that requiring a new trial on the basis of such an omission is unwarranted. The First Circuit has held that a court need not instruct the jury on "every nuance of a party's claim or defense" and that its instructions are sufficient if, taken as a whole, alert the jury to the critical issues and the law applicable to those issues. Zimmerman, 262 F.3d at 79-80.  The Court is satisfied that its instructions on ambiguity in this case provided the

-20-

jury with sufficient guidance on identifying the critical issues and the general legal principles applicable to those issues with respect to any ambiguous terms in the Agreement.

Accordingly, Rainbow's motion for a new trial will be denied.

## ORDER

In accordance with the foregoing,

1) Plaintiff's motion for a permanent injunction (Docket No. 185) is **ALLOWED, IN PART, AND DENIED, IN PART.** Defendant and those acting in concert with it are enjoined until February, 2018 from selling, distributing and/or marketing ArborMectin or any other emamectin benzoate product for tree injection manufactured by Rotam North America, Inc. ("Rotam") or any of Rotam's affiliates.

2) Defendant's motion for judgment as a matter of law or, in the alternative, for remittitur or a new trial (Docket No. 193) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 20, 2016